# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

DAVID CHARLES BUNNELL,

        Petitioner,

vs.

KRISTI NOEM, *et al*,

        Respondents.

Case No.: 2:25-cv-02259-GMN-EJY

**ORDER GRANTING TEMPORARY RESTRAINING ORDER**

Pending before the Court is Petitioner David Charles Bunnell's Motion for Temporary Restraining Order, (ECF No. 15). Respondents Michael Bernacke, Pam Bondi, Todd Lyons, and Kristi Noem filed a Response, (ECF No. 22), to which Respondent John Mattos filed a Joinder, (ECF No. 23).[1] Petitioner replied, (ECF No. 24). Because Petitioner satisfies the requirements for injunctive relief, the Court GRANTS his Motion for Temporary Restraining Order.

**I.   BACKGROUND**

Petitioner David Bunnell is a citizen of Iran who moved to the United States in 1977. (Am. Pet. 4:2–4, ECF No. 13). His parents and siblings eventually became U.S. citizens. (*Id.* 4:4–5). In 1980, Petitioner was officially adopted by Charles Bunnell, a U.S. citizen. (*Id.* 4:5–6). At that time, Bunnell was issued a birth certificate and social security number and believed that he was a U.S. citizen as a result of the adoption. (*Id.* 4:6–8). In 2012, he learned that he had never obtained citizenship when he was placed in removal proceedings and ordered

---

[1] Respondent John Mattos' deadline to file a response was on December 8, 2024. (Minute Order, ECF No. 16). Under Federal Rule of Civil Procedure, a court may extend time "on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). Mattos did not file a motion to extend time to file a response and did not explain why his failure to file a response by the deadline was due to excusable neglect. Without such a motion, the Court STRIKES Mattos' untimely Joinder to the Federal Respondents' Response.

removed to Iran. (*Id.* 4:8–10). Petitioner was held in detention for "around 90 days" after his removal was ordered before he was released because he could not be removed. (*Id.* 4:10–12).

On June 22, 2025, over 13 years after he was previously released from detention, Petitioner was detained again. (*Id.* 4:13–15). He has since been detained at Nevada Southern Detention Center ("NSDC") for over 5 months. (*Id.* 5:7–9). Despite complying with ICE's requests to seek travel documents from Iran, Petitioner was informed by a woman at the Iranian consulate that Iran will not accept him because they have no records indicating Bunnell is a citizen of Iran or ever lived in Iran. (*Id.* 4:17–5:6). Petitioner has never lived in or held a lawful status in any other country. (*Id.* 5:6–7).

On November 12, 2025, Petitioner filed a Petition for Writ of Habeas Corpus, (ECF No. 1-1), alleging that his detention is unlawful and seeking immediate release from ICE custody. After the Court appointed the Federal Public Defender as counsel for Petitioner, he filed an Amended Petition, (ECF No. 13), and a Motion for Temporary Restraining Order, (ECF No. 15).

## II. LEGAL STANDARD

### A. Temporary Restraining Order or Preliminary Injunction

Federal Rule of Civil Procedure 65 governs temporary restraining orders and preliminary injunctions. Fed. R. Civ. P. 65. The purpose of a TRO is to "preserv[e] the status quo and prevent [] irreparable harm just so long as is necessary to hold a hearing." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974). A TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

The standard for issuing a TRO is "substantially identical" to the standard for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832,

839 n.7 (9th Cir. 2001). A party seeking a TRO must demonstrate: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter*, 555 U.S. at 20. These four factors—the *Winter* factors—must be shown whenever injunctive relief is sought. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

Although individual appellate panels have questioned the usefulness of the distinction, the Ninth Circuit distinguishes between "mandatory" and "prohibitory" injunctions. *Hernandez v. Sessions*, 872 F.3d 976, 997–98 (9th Cir. 2017). Prohibitory injunctions maintain the status quo, preventing further constitutional violations. *Id.* at 997. By contrast, mandatory injunctions go further, ordering "a responsible party to 'take action.'" *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (quoting *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 484 (1996)). A mandatory injunction "goes well beyond simply maintaining the status quo [and is thus] . . . particularly disfavored." *Id.* (quoting *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1980)). Accordingly, the Ninth Circuit has explained that mandatory injunctions "should not be approved in the absence of a risk of 'extreme or very serious damage.'" *Hernandez*, 872 F.3d at 997 (quoting *Marlyn Nutraceuticals, Inc.*, 571 F.3d at 879). Mandatory injunctions are most likely to be appropriate when "the status quo . . . is exactly what will inflict the irreparable injury upon complainant." *Id.* at 999 (quoting *Friends for All Child., Inc. v. Lockheed Aircraft Corp.*, 746 F.2d 816, 830 n.21 (D.C. Cir. 1984)).

**B. 28 U.S.C. § 2241 Writ of Habeas Corpus**

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas

corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). A district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

## III.   DISCUSSION

At the outset, the Court will convert Petitioner's Motion for Temporary Restraining Order into one for preliminary injunction. Respondents had notice and the opportunity to respond. There is no benefit in additional briefing and the standard is the same. Given the nature of relief granted by the Order, the Court converts this to a Motion for Preliminary Injunction. The now Court considers each of the *Winter* elements with respect to Petitioner's motion in turn.

### A. Likelihood of Success on the Merits

The first *Winter* factor, the likelihood of success on the merits, "is a threshold inquiry and is the most important factor in any motion for preliminary injunction." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (citation modified).

Petitioner raises six grounds for relief: (1) his continued detention violates due process because his removal is not reasonably foreseeable as required under *Zadvydas v. Davis*, 533 U.S. 678 (2001); (2) his continued detention violates the Immigration and Nationality Act ("INA"); (3) ICE unlawfully revoked his release when it failed to follow its own regulations; and (4) ICE's current policy and procedures relating to third-country removals violate the Administrative Procedure Act ("APA") and Petitioner's due process rights, and (5) Petitioner's detention under that policy violates his due process rights. (*See generally* Am. Pet., ECF No. 13). These grounds can be grouped into challenges of three general issues: (1) Petitioner's continued detention, (2) Petitioner's re-detention, and (3) the Administration's third-country removal program.

### i. *Due Process for Continued Detention*

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The Supreme Court has held that "the Due Process Clause protects a [noncitizen] subject to a final order of deportation." *Zadvydas*, 533 U.S. at 693–94. In *Zadvydas*, the Supreme Court held that the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal. *Id.* at 699.

The authority of ICE to detain noncitizens under federal law derives from 8 U.S.C § 1231, which directs the Attorney General of the United States to affect the removal of any noncitizen from this country within 90 days of a final order of removal. 8 U. S. C. § 1231(a)(1). The removal period begins on the latest of three dates: (1) the date the order of removal becomes "administratively final," (2) the date of the final order of any court that entered a stay of removal, or (3) the date on which the [noncitizen] is released from non-immigration detention or confinement. § 1231(a)(1)(B). During the removal period, detention is mandatory. § 1231(a)(2). Under § 1231, the removal period may be extended beyond 90 days for a variety of reasons including a determination by DHS that "removal is not practicable or proper." *Id.*

Because "[a] statute permitting indefinite detention. . . would raise a serious constitutional problem," the Supreme Court has "read an implicit limitation" into the statute and has held that a noncitizen may only be detained for "a period reasonably necessary" to effectuate their removal. *Zadvydas*, 533 U.S. at 682. When a removable noncitizen is detained beyond this reasonable time and "removal is not reasonably foreseeable, the court should hold continued detention unreasonable." *Id.* at 699. The Supreme Court adopted a six-month period of presumptive reasonableness after the removal order is final and confirmed that "[a noncitizen] may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 710. The Court further

determined that "after this 6–month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701. If the Government fails to meet its burden, then the noncitizen must be released from detention. *See Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018).

Here, Petitioner has met his burden to show that "there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 680. First, as of December 22, 2025, Petitioner has been continuously detained for more than six months.[2] Second, Petitioner has shown that his removal is not reasonably foreseeable. Detention becomes "indefinite" when there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Diouf v. Mukasey*, 542 F.3d 1222, 1233 (9th Cir. 2008) (quoting *Zadvydas*, 533 U.S. at 701). Petitioner alleges that he cannot be removed to Iran. He explains that during a call an ICE agent arranged for Petitioner with the Iranian consulate, a woman at the consulate said, "Iran cannot issue him travel documents as there are no records indicating Bunnell is a citizen of Iran or ever lived in Iran." (Am. Pet. 5:1–4). She further told Petitioner that Iran does not have a birth certificate for him, and that "we don't even know who you are." (*Id.* 5:5–6). Petitioner further asserts that he has never lived in or held lawful status in any other country and has not received any documents identifying any other country of removal. (*Id.* 5:6–7).

Respondents argue that Petitioner's statements are "too speculative and conclusory to satisfy Petitioner's burden." (Resp. 11:15–16). Referencing Petitioner's statement that he "cannot be removed to Iran," they insist that a petitioner in these circumstances must "present

---

[2] This determination does not include the 90 days for which Petitioner was detained in 2012. Though Respondents repeatedly assert that Petitioner has been in custody for less than 6 months, as of the date of this Order, Petitioner has now been in detention for a continuous six months since he was re-detained on June 22, 2025. Thus, the Court does not need to reach the parties' arguments regarding whether detention should be calculated cumulatively.

evidence beyond his own speculation." (*Id.* 11:20–21 (quoting *Rene v. Sec'y of Dep't of Homeland Sec.*, No. 06-0336 JAG, 2007 WL 708905, at *4 (D.N.J. Mar. 5, 2007))). The Court disagrees. Petitioner cannot reasonably be expected to have information or evidence that only DHS has access to. *See Carlson v. Landon*, 186 F.2d 183, 188 (9th Cir. 1950) ("[P]etitioner has gone about as far as he could go to prove his claim. . . If there is good reason for the [challenged detention] it is locked in the Director's own chest of knowledge and is unrevealed for proof against it. Surely, in this circumstance, petitioner is not burdened by the impossible task of imagining and refuting causes . . . What more could petitioner have alleged in his [petition?]").

      Beyond that, Petitioner's allegations that he cannot be removed to Iran are not speculative; he specifically identifies a date and call during which Petitioner was informed by the Iranian consulate that Iran will not accept him because they don't know who he is and do not have a birth certificate for him. (Am. Pet. 5:1–6). Petitioner is not required to "show the absence of *any* prospect of removal—no matter how unlikely or unforeseeable." *Zadvydas*, 533 U.S. at 702. He need only show that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. Here, Petitioner's allegations regarding this call provide a "good reason to believe" that he cannot be removed to Iran. Respondents' inability to effectuate removal in the over 13 years since an immigration judge issued his final order of removal further supports Petitioner's claim that removal is not likely in the reasonably foreseeable future. These facts, combined with the undisputed fact that the Government has identified no other possible countries for his removal, is sufficient to satisfy Petitioner's initial burden.

      Having found that Petitioner met his initial burden of "provid[ing] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the Court now turns to whether Respondents have "respond[ed] with evidence sufficient to

rebut that showing." *See Zadvydas*, 533 U.S. at 701. Respondents first point to the fact that Iran "has recently accepted approximately 100 Iranian citizens who have been deported to the United States," (Resp. 12:1–3), presumably to demonstrate that deportation to Iran is not impossible. But Respondents provide no evidence to rebut or even a statement denying Petitioner's allegations that he was told by the Iranian consulate during that interview that they would not accept him because they don't have his birth certificate and don't know who he is. Regardless of whether deportation to Iran is technically possible given the recent successful deportation of Iranian citizens to Iran, Petitioner's allegations are specific to him, not about the general likelihood that Iranian citizens can be deported to Iran. So, Respondents' statement regarding the recent flights to Iran does not rebut Petitioner's allegations that he personally cannot be removed to Iran.

     Respondents also assert that Petitioner's interview with the Iranian consulate on November 5 shows that ICE is "actively pursuing Petitioner's removal to Iran." (Resp. 12:3–5). But the standard for lawful continued detention is not that the Government simply continue "good faith efforts to effectuate [removal]," so Respondents' bare assertion that they are still making efforts to remove him is not sufficient to meet their burden. *See Zadvydas*, 533 U.S. at 702.

     Respondents further argue that the fact Petitioner had an interview with the Iranian consulate is, in and of itself, sufficient to rebut Petitioner's showing. Respondents rely on *Barenboy v. Att'y Gen. of U.S.*, 160 F. App'x 258, 261 n. 3 (3d Cir. 2005), where they explain that the Third Circuit found a petitioner failed to show no reasonable likelihood of removal in the foreseeable future where the embassy was still willing to consider the petitioner's citizenship application. (Resp. 12:5–8). But the facts of that unpublished case are materially distinguishable from those here. In contrast to Petitioner's assertions that the Iranian consulate told him they would not accept him, the petitioner in *Barenboy* had a letter from the Moldovan

Embassy indicating that it was still willing to consider his application. 160 F. App'x at 261 n. 3. Thus, the Court is unpersuaded by Respondents' reliance on this case.

Finally, Respondents contend that the absence of an exact date of Petitioner's removal does not undermine the conclusion that there is a significant likelihood of removal, relying again on a Third Circuit case. (Resp. 12:17–13:3) (citing *Castellanos v. Holder*, 337 F. App'x 263 (3d Cir. 2009)). But the Court does not base its findings in this case on the lack of a certain date of removal. Instead, as explained above, the Court concludes that the Respondents have not "respond[ed] with evidence sufficient to rebut [Petitioner's] showing" that there is good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Having reached that conclusion, the Court finds that Petitioner has met his burden of showing that he is likely to succeed on the merits of his claim that his detention violates his due process rights.[3]

### ii. Revocation of Release

Even if Petitioner had not shown a strong likelihood of success on his continued detention claim, he has also shown a likelihood of success on his claim that the revocation of his release was unlawful.

Respondents have the authority to detain non-citizens with final orders of removal to effect deportation. *See* 8 U.S.C. § 1231; *Zadvydas*, 533 U.S. at 697. But when a non-citizen has been released from immigration detention, the revocation of that release is governed by 8 C.F.R. § 241.13(i), which authorizes ICE to revoke a noncitizen's release for purposes of removal. Specifically, a noncitizen's release may be revoked "if, on account of changed circumstances," it is determined that "there is a significant likelihood that the [noncitizen] may

---

[3] Having found that Petitioner is likely to succeed on his claim that his continued detention violates his due process rights, the Court need not reach his argument that his continued detention violates the APA.

be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2).  Upon such a determination:

> [T]he [noncitizen] will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification.  The [noncitizen] may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

*Id.* § 241.13(i)(3).  Respondents do not dispute that this regulation applies here, nor do they argue that it is not required. (*See generally* Resp.).  Instead, they assert that Petitioner violated the conditions of his supervised release because he failed to "provide ICE with written copies of requests to Embassies or Consulates requesting the issuance of a travel document," including requests he was required to make to attempt to obtain travel documents to Iran. (*Id.* 5:18–28 (citing Order of Supervision, Ex. B to Resp., ECF No. 22-2)).

Petitioner specifically asserts that he has never been told that he was returned to custody because of a "conditions" violation, has not received the interview required by regulation, and has not been invited to contest the revocation of his order of supervision. (Am. Pet. 16:18–19; 17:1–4).  Respondents notably do not contest these allegations.  They do not assert that Petitioner was notified of the reasons for revocation, nor do they contend he was provided an informal interview or given an opportunity to respond to the reasons for revocation. (*See generally* Resp.).

Government agencies are required to follow their own regulations. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954).  Because there is no indication that an informal interview was provided to Petitioner, nor an opportunity for him to respond to the reasons for revocation, the Court finds Petitioner is likely to succeed on his claims that his de-

detainment was unlawful. *See Hoac v. Becerra*, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) (finding that a petitioner was likely to succeed on the merits where there was no indication he had been provided a formal interview) (collecting cases).

### iii. Third-Country Removal

Lastly, Petitioner contends that ICE's policy of removing noncitizens to a third country with no notice or opportunity to seek fear-based protection violates his due process rights and constitutes arbitrary and capricious agency action in violation of the APA. (Am. Pet. 17:21–10:16). Respondents argue that Petitioner's claims that there is a threat of removal to a third country without due process is speculative because DHS has not engaged in efforts to effectuate Petitioner's removal to any other country but Iran. (Resp. 13:6–9).

As the Court has previously found in *Cavieres Gomez v. Mattos*, No. 2:25-cv-00975-GMN-BNW, 2025 WL 3101994 at *6–7 (D. Nev. Nov. 6, 2025), Petitioner has a due process right to receive meaningful notice and opportunity to present a fear-based claim to an immigration judge before DHS deports him to a third country. "Immigration proceedings must provide the procedural due process protections guaranteed by the Fifth Amendment." *Vilchez v. Holder*, 682 F.3d 1195, 1199 (9th Cir. 2012) (citing *Lacsina Pangilinan v. Holder*, 568 F.3d 708, 709 (9th Cir. 2009)). "A 'noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation.'" *Nguyen v. Scott*, 796 F. Supp. 3d 703, 727 (W.D. Wash. Aug. 21, 2025) (quoting *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019) (citing *Mathews v. Eldridge*, 424 U.S. 319, 349 (1976)). "[I]ndividuals whose rights are being determined are entitled to notice of the issues to be adjudicated, so that they will have the opportunity to prepare and present relevant arguments and evidence."*Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999). "In the context of

country of removal designations, last minute orders of removal to a country may violate due process if an immigrant was not provided an opportunity to address his fear of persecution in that country." *Najjar v. Lynch*, 630 F. App'x. 724, 725 (9th Cir. 2016) (non-precedential memorandum disposition). Thus, in accordance with the ample case law above, Petitioner has a due process right to receive meaningful notice and opportunity to present a fear-based claim to an immigration judge before DHS deports him to a third country.[4] Accordingly, the Court finds that Petitioner's requested injunctive relief on this ground is warranted.

### B. Irreparable Harm

The Ninth Circuit has recognized the "irreparable harms imposed on anyone subject to immigration detention" including "subpar medical and psychiatric care in ICE detention facilities" and "the economic burdens imposed on detainees and their families as a result of detention. *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017). Here, Petitioner alleges that he has health complications and needs "extensive medical treatment." (Pet. ¶ 3, ECF No. 1-1). He further explains that his wife and stepson are facing looming eviction, and the business he runs with his son is struggling due to his detention. (Am. Pet. 11:26–12:1).

Further, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Where, as here, the "alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005). The Ninth Circuit has also noted that "unlawful detention certainly constitutes 'extreme or very serious' damage, and that damage is not compensable in damages." *Hernandez*, 872

---

[4] Because the Court finds that Petitioner puts forth a successful argument under the Fifth Amendment right to due process, it need not determine whether the stated policy violates the APA.

F.3d at 999. Thus, the Court finds that this factor weighs in favor of issuing a preliminary injunction.

### C. Balance of the Equities and Public Interest

The last two *Winter* factors merge when the Government is the opposing party, as is the case here. *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418 435 (2009)). Here, the balance of the equities and the public interest tip sharply in Petitioner's favor. Preventing the violation of constitutional rights serves the public interest. *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005); *see also Melendres v. Arpaio*, 695 F.3d at 1002 ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights.").

The only interest asserted by the Government is in the "lawful enforcement of the immigration laws." (Resp. 15:23–24). But "the public interest in enforcement of immigration laws, although significant, does not override the public interest in protecting the safeguards of the Constitution." *Domingo-Ros v. Archambeault*, No. 25-CV-01208-DMS-DEB, 2025 WL 1425558, at *5 (S.D. Cal. May 18, 2025). While the Government has an interest in executing removal orders, agencies cannot act unlawfully even pursuing legitimate ends. *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 766 (2021). Petitioner has demonstrated that he is likely unlawfully detained in violation of his due process rights and is suffering the harms of immigration detention. "On the other hand, the burden on Respondents in releasing Petitioner from detention is minimal, especially considering Petitioner's compliance with the requirements of the Order of Supervision." *Hoac*, 2025 WL 1993771, at *6. There is nothing in the current record to suggest that releasing Petitioner would impede Respondents' ability to remove him if the necessary travel document is obtained.

///

///

### D. Status Quo

In his motion, Petitioner asks the court to release him from detention "to preserve the status quo." (Mot. TRO 2:11–12). The status quo *ante litem* is "the last uncontested status which preceded the pending controversy[.]" *GoTo.com, Inc. v. Walt Disney, Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) (quoting *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963)); *see Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1061 (9th Cir. 2014) ("the 'status quo' refers to the legally relevant relationship between the parties before the controversy arose.") (citing *McCormack v. Hiedeman*, 694 F.3d 1004, 1020 (9th Cir. 2012)).

Respondents argue that Petitioner is seeking mandatory injunctive relief disrupting the status quo in the form of immediate release from custody, and thus faces a heightened burden. (Resp. 9:5–9).[5] But "several district courts have recently concluded that releasing a re-detained noncitizen who had been on supervised release preserves rather than alters the status quo." *Nguyen v. Scott*, 796 F. Supp. 3d 703, 718 (W.D. Wash. Aug. 21, 2025) (collecting cases). And several of those courts have thus concluded that similarly situated petitioners "seek a prohibitory injunction because they seek to preserve the status quo preceding this litigation— their physical presence in the United States free from detention." *Id.* (quoting *Domingo-Ros v. Archambeault*, No. 25-CV-1208-DMS-DEB, 2025 WL 1425558, at *2 (S.D. Cal. May 18, 2025)); *see also Doe v. Becerra*, 787 F. Supp. 3d 1083, 1090 (E.D. Cal. Mar. 3, 2025) ("Petitioner had remained out of custody for over five years until his bond was suddenly revoked. It is questionable whether that status quo is properly considered to be detention when the Government suddenly took an allegedly unconstitutional action in rearresting Petitioner without a hearing.").

---

[5] In making this argument, Respondents cite only non-binding authority from the Third Circuit. In fact, throughout their Response, Respondents cite an abundance of out-of-circuit authority (including mostly cases from the Third Circuit) to support arguments where plenty of binding authority exists in this Circuit. Respondents' failure to cite a single binding authority other than *Zadvydas* in its argument is both unpersuasive and unhelpful to the Court.

The Court agrees with the many well-reasoned courts in this district that have determined that the relief sought here would preserve the status quo.  And even assuming without deciding that the injunctive relief requested does constitute a mandatory injunction, that higher standard is met here.  "An alleged violation of Petitioner's due process rights and his continued unlawful detention in violation of those rights constitutes extreme or very serious damage that will result in the absence of an injunction." *Doe v. Becerra*, 787 F. Supp. 3d at 1090 (citing *Hernandez*, 872 F.3d at 999).

### E.  Relief Requested

First, Petitioner requests that he be released immediately. (§ 2241 Pet. 21:15).  The remedy for a *Zadvydas* claim is generally release of the habeas petitioner under conditions of supervision.  *Zadvydas* explains that "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." 533 U.S. at 699–700.  It further provides that the noncitizen's "release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the [noncitizen] may no doubt be returned to custody upon a violation of those conditions." *Id.* at 700.  Moreover, when a court considers a due process claim, it may tailor relief to the specific problem that gives rise to the due process violation. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).  Because the Court holds that Petitioner's continued detention violates the Fifth Amendment based on the analytical framework provided in *Zadvydas*, the Court finds that Petitioner's immediate release, subject to reasonable terms of supervision provided under 8 U.S.C. § 1231(a)(3), is warranted. *See Zadvydas*, 533 U.S. at 699–700; *see also Trejo*, 2025 WL 2992187, at *11 (ordering in the alternative that Petitioner be released from custody subject to reasonable terms of supervision under *Zadvydas*).

Second, Petitioner requests that the Court prohibit Respondents from re-detaining Petitioner in the future absent proof of changed circumstances making his removal reasonably

foreseeable. Third, Petitioner requests that the Court prohibit Respondents from removing petitioner to a third country without providing Petitioner and Petitioner's counsel with adequate notice of intent to seek removal to a third country and due process in the form of an opportunity to seek to reopen Petitioner's immigration court proceedings to seek fear-based relief from removal. For the reasons discussed above, the Court finds that these forms of relief are warranted.

### F. Bond

"Federal Rule of Civil Procedure 65(c) permits a court to grant preliminary injunctive relief 'only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.'" *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting Fed. R. Civ. P. 65(c)). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, if any.'" *Id.* (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)). "In particular, '[t]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct.'" *Id.* at 1086 (quoting *Jorgensen*, 320 F.3d at 919). Petitioner requests that the court not require him to post security because there is no quantifiable harm to Respondents. (Reply 10:1–3, ECF No. 24).

The Court finds that no security is required here. Courts regularly waive security in cases like this one. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011); *Maldonado Vazquez v. Feeley*, No. 2:25-cv-01542-RFB-EJY, 2025 WL 2676082, at *23 (D. Nev. Sept. 17, 2025); *Lepe v. Andrews*, No. 25-cv-01163-KES-SKO, 2025 WL 2716910, at *10 (E.D. Cal. Sep. 23, 2025); *Pinchi v. Noem*, No. 25-cv-05632-RMI-RFL, 2025 WL 1853763, at *4 (N.D. Cal. Jul. 4, 2025).

///

## IV. CONCLUSION

**IT IS HEREBY ORDRED** that Petitioner's Motion for Temporary Restraining Order, (ECF No. 15), is converted to a Motion for Preliminary Injunction, and is **GRANTED.**

**IT IS FURTHER ORDERED** that Petitioner must be released from detention immediately under reasonable terms of supervision set forth in 8 U.S.C. § 1231(a)(3). Determining reasonable terms of supervision shall not in any way impede the immediate release of Petitioner.

**IT IS FURTHER ORDERED** that Respondents must file a notice on the docket no later than December 24, 2025, to certify compliance with the Court's order.

**IT IS FURTHER ORDERED** that Respondents are enjoined from re-detaining Petitioner in the future absent proof of changed circumstances making his removal reasonably foreseeable.

**IT IS FURTHER ORDERED** that Respondents are enjoined from removing Petitioner to a third country without providing Petitioner with adequate notice of intent to seek removal to a third country and due process in the form of an opportunity to seek to reopen Petitioner's immigration court proceedings to seek fear-based relief from removal.

///
///
///
///
///
///
///

**IT IS FURTHER ORDERED** that this preliminary injunction shall remain in effect, absent a successful motion to modify or dissolve it, until this Court issues a final decision on Petitioner's habeas petition.

Counsel for Respondents are directed to immediately provide notice of this Order to the restrained parties they represent. The Clerk of Court is kindly directed to send a copy of this Order to the Warden of Nevada Southern Detention Center in Pahrump, Nevada.

**DATED** this __22__ day of December, 2025.

_____
Gloria M. Navarro, District Judge
United States District Court